UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

Kenneth Staley,

        Plaintiff,                  Case No. 1:20-cv-79

v.                                          Honorable Paul L. Maloney

Unknown Shaffer et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ICF Sergeants Brice Swanson and Unknown

Lynhart and ICF Correctional Officers Unknown Shaffer, Unknown Party (also listed as Unknown Shaffer), Unknown Brown, Unknown Norris, Unknown Smith, Unknown Andrews, Unknown Neff, and Unknown Deures.

Plaintiff alleges that during the evening of September 20, 2019, he was moved from one cell to another by Defendant Shaffer and Defendant Unknown Party. The cell to which he had moved had not been cleaned after the previous occupant moved out. Plaintiff alleges that "[t]here was a used blanket on the bed, used soap on the sink, [feces] residue in the [toilet], clumped up urine and urine stains in the corner, a pound of trash in the desk and footlocker, and blood on the wall." (Compl., ECF No. 1, PageID.4.) Plaintiff claims the condition of the cell was inhumane, and that he told each Defendant about the condition of the cell, but they did nothing. There, Plaintiff contends, each Defendant violated Plaintiff's Eighth Amendment rights.

Plaintiff was not allowed to dump his trash until September 22, 2019, when he told Defendant Deures to tell Defendant Lynhart to take the trash out of his room lest Plaintiff catch a disease.

On September 21, 2019, Plaintiff stopped Defendant Swanson and informed him of the cell conditions. Defendant Swanson told Plaintiff that he would remain in the cell in that condition "until [Plaintiff] pull[s] out the trial on a criminal case."[1] (*Id*.) Plaintiff contends that Swanson thereby violated Plaintiff's First Amendment rights.

The same day, Plaintiff stopped Defendant Lynhart and told Lynhart about the condition of his cell. Defendant Lynhart indicated he would take no action because Plaintiff took

---

[1] Although Plaintiff does not identify the criminal trial at issue, it appears he was charged with possession of a weapon in prison. *See* MDOC Offender Tracking Information System (OTIS) – Offender Profile for Kenneth Staley, at https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=884930 (visited February 19, 2020). Plaintiff was tried on the charge on December 5, 2019, and sentenced on December 17, 2019. *See* https://courts.michigan.gov/opinions_orders/case_search (search case number 352323, visited February 19, 2020).

2

his slot hostage[2] on September 20, 2019.  Plaintiff contends Lynhart thereby violated Plaintiff's First Amendment rights.

Plaintiff seeks damages totaling $30,000.00, a television with headphones, and a waiver of the loss of privileges sanction currently imposed upon him.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

---

[2] An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g., Earby v. Ray*, 47 F. App'x. 744, 745 (6th Cir. 2002).  It is against prison rules and a common form of prisoner misbehavior.  *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011) (report and recommendation adopted 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011)).

3

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendants' conduct violated his Eighth and First Amendment rights.

## III. Eighth Amendment

Plaintiff contends that the conditions of his cell from the evening of September 20, 2019, to some time on September 22, 2019, were so inhumane that his Eighth Amendment rights were violated. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In *Hutto v. Finney*, 437 U.S. 678 (1978), the Supreme Court considered the significance of the duration of particular conditions of confinement when determining whether the conditions were tolerable:

> It is equally plain, however, that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months.

*Hutto*, 437 U.S. at 686-87. The Court's analysis in *Hutto* supports the conclusion that allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

Essentially, Plaintiff was placed in a dirty cell for two days. The conditions of the cell when Plaintiff arrived on September 20, 2019, were certainly unpleasant, but the conditions

5

were so temporary that they cannot be described as intolerable. Accordingly, Plaintiff has failed to state a claim for violation of the Eighth Amendment.

## IV. First Amendment

Plaintiff contends that the threats of Defendants Swanson and Lynhart to keep Plaintiff in the dirty cell—in Swanson's case "until [Plaintiff] pull[s] out the trial on a criminal case," and in Lynhart's case "because [Plaintiff] took the slot hostage,"—violated Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claims fail at the first step. With respect to Defendant Lynhart, the conduct that prompted the purportedly retaliatory act was Plaintiff taking his food slot hostage. Plaintiff's act violated a legitimate prison regulation. The Sixth Circuit had determined that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (quoting *Thaddeus-X*).

Evaluating Petitioner's retaliation claim against Defendant Swanson is more difficult because it is not at all clear what is meant by "until [Plaintiff] pull[s] out the trial on a criminal case." To the extent Defendant Swanson is threatening Plaintiff because of Plaintiff's

6

possession of a weapon, the charge at the heart of the then-pending criminal prosecution, the claim fails at the first step because possession of a weapon is not "protected conduct." Perhaps Swanson was communicating that Plaintiff would remain in the cell until Plaintiff is "pulled out" of the prison for the trial or until the trial is complete; but, those interpretations would not establish any "protected conduct" by Plaintiff either. In short, Plaintiff has failed to state a claim for First Amendment retaliation against Defendant Swanson because Plaintiff's allegations do not show protected conduct.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 28, 2020            /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge